## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BOARD OF SUPERVISORS OF THE**                    **CIVIL ACTION**
**LOUISIANA STATE UNIVERSITY**
**AND AGRICULTURAL AND**
**MECHANICAL COLLEGE, ET AL**

**VERSUS**                                         **NO: 04-1593**

**SMACK APPAREL CO., AND**                         **SECTION: "S" (1)**
**WAYNE CURTISS**

### ORDER AND REASONS

The Renewed Motion for Civil Contempt, Sanctions, Attorneys' Fees and Costs (Doc. #295) by plaintiffs, Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College, Board of Regents of the University of Oklahoma, Ohio State University, University of Southern California, and The Collegiate Licensing Company is **GRANTED**. Plaintiffs' Motion to Release the Injunction Bond (Doc. # 296) is **DENIED**.

### BACKGROUND

In December 2003, defendants sold six T-shirt designs that were timed to coincide with three national football championship games at the Sugar Bowl, Rose Bowl and the Fiesta Bowl. On July 18, 2006, the court granted summary judgment to plaintiffs, finding that defendants' sale of these

six designs infringed upon the plaintiff schools' trademark rights.  On February 7, 2007, this court

entered an order, permanently enjoining the defendants Wayne Curtis and Smack Apparel Company

from "manufacturing, distributing, advertising, selling, or offering for sale any of the six designs

found to be infringing in the court's July 18, 2006, summary judgment order or any other designs

that are similar to the six infringing designs" (Doc. #246).[1]

On January 2, 2008, plaintiffs moved for a temporary restraining order, seizure order and

civil contempt sanctions, alleging that the defendants violated the terms of the court's permanent

injunction "by actively selling T-shirt designs . . . us[ing] the Plaintiffs' school colors and other

indicia in virtually the same manner as those designs that were subject of the Permanent Injunction"

(Doc. #288).  Plaintiffs alleged that, like the earlier designs, the offending new T-shirt designs were

timed to coincide with a championship game which was the 2008 BCS National Championship game

on January 7, 2008, in New Orleans.

On January 4, 2008, after notice to the defendants, the court conducted an evidentiary

hearing, during which the parties presented witnesses and exhibits.  The court also examined seven

new T-shirt designs which plaintiffs alleged to be violative of the court's permanent injunction.  The

court granted plaintiffs' motion and imposed a temporary injunctive order (Doc. #292).  The court

specifically found that the seven new designs were similar to the six designs that were found to be

infringing in its July 18, 2006, summary judgment order (Doc. #169), and plaintiffs had

demonstrated by clear and convincing evidence that defendants failed to comply with the terms of

---

[1]On May 15, 2007, defendants filed a Notice of Appeal regarding the court's grant of summary judgment on July 18, 2006, and the court's February 12, 2007, judgment, among other rulings; the appeal is pending in the United States Court of Appeals for the Fifth Circuit.

the permanent injunction by manufacturing, advertising, and offering for sale the new designs. Additionally, the court found that defendants and those acting in concert or participation with them would to continue to sell the unauthorized T-shirt designs unless enjoined by the court.  The injunctive and seizure provisions of the court's order expired ten days from the date of the order, and were conditioned upon plaintiffs' posting a bond of $100,000.  The court pretermitted plaintiffs' motion for contempt sanctions, attorneys' fees, and costs.  No further action with respect to the temporary restraining order was taken by the parties until the present motions, and the temporary restraining order has expired.

The motions before the court concern plaintiffs' demand for contempt sanctions, attorneys' fees and costs for defendants' failure to comply with the court's permanent injunction, and plaintiffs' request to release the injunctive bond.

## ANALYSIS

### A.  Legal Standard

A federal court can find a party in civil contempt when the party "violates a definite and specific order of the Court requiring him to perform or refrain from performing a particular act or acts with knowledge of the Court's order."[2]  A movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with

---

[2]*SEC v. First Financial Group*, 659 F.2d 660, 669 (5th Cir. 1981).

the court's order.[3]  The evidence must be "'so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.'"[4]

Upon a finding of contempt, the district court has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process.[5]  "[T]he proper aim of judicial sanctions for civil contempt is 'full remedial relief,' that such sanctions should be 'adapted to the particular circumstances of each case,' and that the only limitation upon the sanctions imposed is that they be remedial or coercive but not penal."[6]  Civil contempt can serve two purposes: to enforce compliance with a court's order through coercion, or to compensate a party who has suffered unnecessary injuries or costs because of contemptuous conduct.[7]  A contempt order is compensatory when it orders an award for lost profits or revenue, and attorneys' fees and costs resulting from contemptuous conduct.[8]  A plaintiff may recover a defendant's profits arising from the contemptuous conduct under the theory of unjust enrichment.[9]  Further, a court has the authority to award of

---

[3]*Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 581-82 (5th Cir. 2005).

[4]*Test Masters,* 428 F.3d at 582(*quoting Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 383 (5th Cir. 1999)).

[5]*Test Masters,* 428 F.3d at 582.

[6]*Fla. Steel Corp. v. Nat'l Labor Relations Bd.*, 648 F.2d 233, 239 (5th Cir. 1981)(internal citations omitted).

[7]*Travelhost, Inc. v. Blanchard*, 68 F.3d 958, 961-62 (5th Cir. 1995).

[8]*Travelhost,* 68 F.3d at 962.  *See also American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000).

[9]*Manhattan Industries, Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 6 (2nd Cir. 1989) ("[T]here is no doubt that an accounting of profits may be had by the complaining party in a contempt case to deter future infringements.") .  *See also Mendoza v. Regis Corp.*, 2005 WL 1109262, at *3 (W.D. Tex. 2005) and *Cancer Research Institute, Inc. v.*

4

attorneys' fees for compensatory purposes after a finding of civil contempt.[10]

A contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy.[11]

"[T]he court must give careful consideration to the possibility that a defendant found to have either infringed the plaintiff's mark or unfairly competed with the plaintiff will modify his behavior ever so slightly and attempt to skirt the line of permissible conduct."[12] It is well established that the protection of a trademark requires that a party who has been "found guilty of infringing the trademark of others should thereafter be required to keep a safe distance away from the dividing line between violation of, and compliance with, the injunction."[13]  "'[A] competitive business, once convicted of unfair competition in a given particular, should thereafter be required to keep a safe distance away from the margin line - even if that requirement involves a handicap as compared with those who have not disqualified themselves.'"[14]

---

*Cancer Research Society, Inc.,* 744 F. Supp. 526, 531 (S.D. N.Y. 1990).

[10]*Cook v. Ochsner Foundation Hospital,* 559 F.2d 270, 272 (5th Cir. 1977)("It matters not whether the disobedience is willful, the cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party . . .").

[11]*Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.,* 112 F.3d 1296, 1307 (5th Cir. 1997)(*citing Maggio v. Zeitz,* 333 U.S. 56, 69 (1948)).

[12]*Conan Properties, Inc. v. Conans Pizza, Inc.,* 752 F.2d 145, 154 (5th Cir. 1985)

[13]*Eskay Drugs, Inc. v. Smith, Kline & French Labs.,* 188 F.2d 430, 432 (5th Cir. 1951).

[14]*Conan Properties,* 752 F.2d at 154 (5th Cir. 1985)((*quoting Chevron Chemical Co., v. Voluntary Purchasing Groups, Inc.,* 659 f.2d 695, 705 (5th Cir. 1980), *cert. denied,* 457 U.S. 1126 (1982)).  *See also Kentucky Fried Chicken Corp., Diversified Packaging Corp.,* 549 F.2d 368, 390 (5th Cir. 1977).

**A.  Civil Contempt, Sanctions, Attorneys' Fees and Costs**

The first two elements necessary to establish civil contempt are satisfied: at all pertinent times, defendants were subject to this court's February 7, 2007, order permanently enjoining them from "manufacturing, distributing, advertising, selling, or offering for sale any of the six designs found to be infringing in the court's July 18, 2006, summary judgment order or any other designs that are similar to the six infringing designs."

As to the third element, in the injunction proceedings, the court found "clear and convincing evidence" that defendants failed to comply with the terms of the permanent injunction by manufacturing, advertising, and offering for sale seven new T-shirt designs.  With notice to the defendants, the court conducted an evidentiary hearing at which testimony and documentary evidence were adduced.  The court specifically compared the new T-shirt designs to the earlier T-shirt designs, and found them to be strikingly similar to the earlier T-shirt designs and not in compliance with the permanent injunction.  It is clear that defendants did not keep a safe distance from the plaintiffs' trademark rights.  The evidence that defendants violated the court's permanent injunction is "'so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.'"[15]

The court finds that the defendants violated the permanent injunction and are in civil contempt, entitling plaintiffs to sanctions in the form of compensatory relief through the disgorgement of defendants' profits that were received through the sale of the offending T-shirt

---

[15]*Test Masters,* 428 F.3d at 582(*quoting Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 383 (5th Cir. 1999)).

designs from the date of this court's permanent injunction to the expiration of the temporary restraining order.  Additionally, plaintiffs are entitled to their attorney's and costs arising from temporary restraining order.  The court finds that such sanctions are necessary to enforce future compliance with the court's permanent injunction.

With regard to the disgorgement of defendants' net profits derived from the improper use of the offending T-shirt designs, the court is unable to compute what profits defendant derived from the offending T-shirt designs without discovery on this issue.  Accordingly, plaintiffs shall complete discovery on this issue no later than October 31, 2008.  The issue will be heard on December 3, 2008.

Further, the defendants are also ordered to pay plaintiffs' attorney's fees and costs for the motion for the temporary restraining order, the seizure, and this motion.  The issue of the amount of attorneys' fees and costs are referred to the magistrate judge for a report and recommendation.

The Renewed Motion for Civil Contempt, Sanctions, Attorneys' Fees and Costs (Doc. #295) is **GRANTED.**

## C.  Injunction Bond

On January 4, 2008, plaintiffs, in compliance with the court's order of January 4, 2008, posted a $100,000 bond "in case it should be decided that the Temporary Restraining Order and Seizure Order was wrongfully obtained ..."  Though the defendants have not appealed the January 4, 2008, temporary restraining order, the underlying permanent injunction upon which the January 4, 2008, temporary restraining order is based, has been appealed by the defendants and the appeal is still pending.  Hence, until it is decided whether the Temporary Restraining Order and Seizure

Order was wrongfully obtained, the bond must remain in effect.[16]

Plaintiffs' Motion to Release the Bond is **DENIED**.

New Orleans, Louisiana, this __26th__ day of August, 2008.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

---

[16]*See Meyers v. Block*, 120 U.S. 206, 213 (1887).