UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY, ETC. ET AL. | CIVIL ACTION |
|---|---|
| VERSUS | NO. 04-1593 |
| SMACK APPAREL COMPANY ET AL. | SECTION "S" (2) |

## FINDINGS AND RECOMMENDATION

This is an intellectual property case in which the plaintiffs, collegiate football powerhouses,[1] obtained a judgment of this court based upon defendants' infringement of their trademark rights through defendants' manufacture and sale of certain t-shirts marketed primarily to football fans. The presiding district judge previously entered her Order and Reasons granting plaintiffs' motion for civil contempt, sanctions, attorneys' fees and costs, and denying their motion to release the bond posted when they obtained a temporary injunctive order. Record Doc. No. 313. In the order granting the motion for civil contempt, the district judge concluded that defendants, Smack Apparel Company and Wayne Curtiss, had violated this court's previously issued permanent injunction. The district judge also ordered "defendants . . . to pay plaintiffs' attorney's fees and costs for the motion for the temporary restraining order, the seizure [of the offending t-shirts],

---

[1] Plaintiffs are the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU"), the Board of Regents of the University of Oklahoma, Ohio State University, the University of Southern California and the Collegiate Licensing Company, a marketing and licensing agent for LSU and the University of Oklahoma.

and this motion." Id. at p. 7. In the same order, the district judge referred to me for findings and recommendation the determination of the amount of recoverable attorneys' fees and costs. Id.

This is not the first time that I have considered the quantum of attorneys' fees and costs recoverable by plaintiffs in this case. My report and recommendation, Record Doc. No. 261, establishing the reasonable fees of some of the same attorneys and paralegals for whom fees are sought in the instant motion was accepted by the court and made its order on August 28, 2007. Record Doc. No. 278.

In their original submissions concerning quantum, plaintiffs sought $51,768.60 in attorney's fees and $6,096.50 in costs incurred from December 2007 through May 2008 in connection with the temporary restraining order, seizure order and motion for contempt. Plaintiffs contend that they are entitled, at a minimum, to the full amount of fees billed, and they also seek an enhancement of the fees. Record Doc. No. 314, Plaintiffs' Memorandum at pp. 3, 5, 12. Defendants filed an opposition memorandum, in which they argue that the fees and costs requested should be significantly reduced. Record Doc. No. 320. Plaintiffs received leave to file a reply memorandum. Record Doc. Nos. 322, 324, 325.

I ordered plaintiffs to provide sworn statements summarizing, for each attorney and paralegal, the total hours worked, hourly rates and total fees sought for each attorney

2

and paralegal. Record Doc. No. 326. Plaintiffs filed a sworn statement for each of the two law firms that represented them. Record Doc. Nos. 331, 332.

Without obtaining leave of court, as required by Local Rule 7.5E, plaintiffs filed a supplemental memorandum in support of attorney's fees and costs, which I have nevertheless considered. In this memorandum, plaintiffs seek additional attorney's fees and costs related to their motion for a temporary restraining order, seizure order and contempt sanctions, which were incurred and/or billed to their clients after they filed their original memorandum. They seek additional fees of $22,306.50 and additional costs of $1,376.50. Thus, the grand total of fees and costs sought by plaintiffs is $81,548.10. Record Doc. No. 334. Smack did not respond to plaintiffs' supplemental memorandum.

Having reviewed the written submissions of the parties, the record and the applicable law, and for the following reasons, I find and recommend that defendants should pay to plaintiffs the amount of $38,912.37 in reasonable attorneys' fees and $7,312.73 in recoverable costs, for the following reasons.

The basis for the district judge's award of attorney's fees and costs is her ruling that Smack was in contempt of the court's permanent injunction. "Compensatory civil contempt reimburses the injured party for the losses and expenses incurred because of his adversary's noncompliance. This includes losses flowing from noncompliance and expenses reasonably and necessarily incurred in the attempt to enforce compliance."

Cook v. Ochsner Found. Hosp., 559 F.2d 270, 272-73 (5th Cir. 1977) (quotation omitted). "An award of attorney's fees is an appropriate sanction where a party incurs additional expenses as a result of the other party's noncompliance." Rousseau v. 3 Eagles Aviation, Inc., 130 Fed. Appx. 687, 2005 WL 1121987, at *2 (5th Cir. 2005) (citation omitted). The district court does "not abuse its discretion by awarding fees because the award compensates [the prevailing party] for the expenses reasonably and necessarily incurred in [its] attempt to enforce compliance." Id. (citation omitted).

The appropriate measure of attorney's fees to be awarded for obtaining an order of civil contempt is determined by the lodestar analysis. Cook, 559 F.2d at 273 (citing Johnson v. Georgia Hwy. Express, Inc., 488 F.2d 714 (5th Cir. 1974)). In that analysis, the lodestar is first calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work. Heidtman v. County of El Paso, 171 F.3d 1038, 1043 (5th Cir. 1999) (citing City of Burlington v. Dague, 505 U.S. 557, 562 (1992); Shipes v. Trinity Indus., 987 F.2d 311, 319-20 (5th Cir. 1993)). After determining the lodestar amount, the court evaluates the Johnson factors in reaching its award. The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client

4

or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. Id. at 717-19.

However, the United States Supreme Court has stated that three of the Johnson factors, i.e., the complexity of the issues, the results obtained and the preclusion of other employment, are presumably fully reflected and subsumed in the lodestar amount. Id. (citing Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 565 (1986)). The Supreme Court has also "barred any use of the sixth factor," whether the fee is fixed or contingent. Walker v. United States Dep't of Housing & Urban Dev., 99 F.3d 761, 772 (5th Cir. 1996) (citing City of Burlington, 505 U.S. at 567).

The lodestar "is presumptively reasonable and should be modified only in exceptional cases." Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993) (citing City of Burlington, 505 U.S. at 562); accord Heidtman, 171 F.3d at 1043. Although the party seeking attorney's fees bears the initial burden of submitting adequate documentation of the hours reasonably expended and of the attorney's qualifications and skill, the party seeking reduction of the lodestar bears the burden of showing that a reduction is warranted. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Wegner v. Standard Ins.

Co., 129 F.3d 814, 822 (5th Cir. 1997); Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 329 (5th Cir. 1995) (hereinafter "LP&L").

Plaintiffs seek fees for the work of attorneys R. Charles Henn, Jr., W. Andrew Pequignot, Alex S. Fonoroff and Charles H. Hooker III of the Kilpatrick Stockton law firm in Atlanta; of attorney Edward H. Bergin of the Jones Walker firm in New Orleans; and of paralegals at the two firms. Except for Bergin, individually, plaintiffs have provided evidence concerning the qualifications, experience, skill and customary hourly rates of their attorneys, along with copies of the billing statements submitted by Kilpatrick Stockton to their clients and summaries of the Jones Walker timekeepers' work. Record Doc. No. 314-2, Plaintiffs' Exhs. A, B and C to declaration under penalty of perjury of R. Charles Henn, Jr., dated September 9, 2008; Record Doc. No. 314-9, Plaintiff's Exh. A to declaration under penalty of perjury of Edward H. Bergin, dated September 9, 2008; Record Doc. No. 331, declaration under penalty of perjury of Charles H. Hooker, III, dated December 5, 2008; Record Doc. No. 332, Bergin's second declaration under penalty of perjury, dated December 5, 2008; Record Doc. No. 334-2, Henn's supplemental declaration under penalty of perjury, dated December 18, 2008. In addition, I am familiar with Henn and Bergin based upon their appearances before me.

This evidence establishes that Henn, a partner with 10 years of experience in intellectual property litigation, charged $445 per hour for his work on the relevant

motions in this case; Fonoroff, who has eight years of experience in intellectual property litigation, charged $395 per hour; Pequignot, who has two years of experience in intellectual property litigation, charged $275 per hour; and Hooker, who has one year of litigation experience and one year of federal appellate court law clerk experience, charged $250 per hour. Kilpatrick Stockton paralegals Teilhaber and Fesshazion charged $220 and $100 per hour, respectively. According to the Jones Walker website, Bergin has 29 years of experience in civil litigation, although he does not specialize in intellectual property law.[2] He has received the highest rating for legal ability and ethical standards from his peers.[3] The evidence shows that he charged hourly rates of $350, $389 and $395 for his work on the relevant motions in this case, and that his paralegal, McGehee, charged $110 per hour, with a rate increase to $120 per hour. Plaintiffs' submissions do not show when Bergin's or McGehee's rates changed.

An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his customary billing rate, the rate is within the range of prevailing market rates and the rate is not contested. LP&L, 50 F.3d at 328. Smack contests the requested hourly rates, arguing that they are excessive and that the court

---

[2] "Bergin's practice focuses on commercial litigation with emphasis on utility regulation, complex and class action litigation, contract litigation, energy litigation, and antitrust." Jones Walker website, avail. at http://joneswalker.com/professionals-15.html.

[3] Martindale-Hubbell website, avail. at http://www.martindale.com/Edward-H-Bergin/603365-lawyer.htm.

7

should award the same rates as I recommended in my report and recommendation on May 23, 2007, Record Doc. No. 261, which the presiding district judge adopted in her order of August 28, 2007. Record Doc. No. 278.

Based on the memoranda and exhibits, my experience in this court in reviewing and evaluating numerous requests for awards of attorney's fees, my personal knowledge of the qualifications and skills of the attorneys involved, and my knowledge of attorneys' fee awards in this district, I find that the hourly rates sought for each attorney in this case are <u>not</u> consistent with market rates in the New Orleans legal market for attorneys with the skill and experience of these particular attorneys working on this type of case and are not reasonable. Despite the specialized qualifications of the Kilpatrick Stockton attorneys and Bergin's lengthy civil litigation experience, I find that the rates they have requested are excessive and are not customary in this legal community.

However, I do not accept Smack's argument that the same hourly rates that I recommended in May 2007 and the district judge awarded in August 2007 for work performed between March 2004 and November 2006 are reasonable rates for work performed between December 2007 and November 2008. The billing rates of attorneys in the New Orleans area undoubtedly increased from November 2006 to November 2008, just as other costs did. <u>See, e.g.</u>, Social Security Admin., "Automatic Increases–Latest

Cost-of-Living Adjustment"[4] (In 2009, Social Security benefits will increase from 2008 levels by 5.8 percent, based on the same percentage increase in the average Consumer Price Index for Urban Wage Earners and Clerical Workers from the third quarter of 2007 to the third quarter of 2008.); Bureau of Labor Statistics, "Consumer Price Index News Release" (Nov. 19, 2008)[5] (The Consumer Price Index for Urban Wage Earners and Clerical Workers in October 2008 was 3.8 percent higher than in October 2007.). Indeed, Bergin states in his original declaration that his hourly rate increased from $350 to $395 during the period from December 2007 through May 2008. Thus, I find that the reasonable hourly rates of plaintiffs' attorneys and paralegals are higher than they were in my prior report and recommendation, although not as high as plaintiffs have requested.

Given Henn's specialized experience in trademark litigation, I find that he should be compensated at the same rate as Bergin, who has many more years of litigation experience, but not in the particularized field of intellectual property law. I find that the following hourly rates are at the top of the range of prevailing market rates for lawyers with comparable experience and expertise in litigation of this type, and that these rates are reasonable in this case.

---

[4] Avail. at http://ssa.gov/OACT/COLA/latestCOLA.html.

[5] Avail. at http://stats.bls.gov/news.release/archives/cpi_11192008.htm.

| Attorney Name | Years of Practice | Requested Rate | Reasonable Hourly Rate |
| --- | --- | --- | --- |
| R. Charles Henn, Jr. | 10 | $445 | $325 |
| Alex S. Fonoroff | 8 | 395 | 225 |
| W. Andrew Pequignot | 2 | 275 | 150 |
| Charles H. Hooker III | 1 | 250 | 140 |
| Edward H. Bergin | 29 | 350-395 | 325 |

Furthermore, I find that a reasonable rate for all paralegals who worked on the case is $80 per hour. See Thompson v. Connick, 553 F.3d 836, 868 (5th Cir. 2008) (approving hourly rates of $202 to $312 for experienced attorneys and $67 to $112 for paralegals as "at the upper range of what was reasonable in the" Eastern District of Louisiana from 2003 to 2007); Wells v. Regency Hosp. Co., No. 07-3775, 2008 WL 5273712, at *3 (E.D. La. Dec. 15, 2008) (Roby, M.J.) (reviewing cases, finding that $115 per hour for paralegal work done in 2008 was excessive and awarding $64 per hour); St. Stephen's Missionary Baptist Church v. Taylor, No. 05-294, 2008 WL 4057162, at *2-4 (E.D. La. Aug. 29, 2008) (Berrigan, J.) (hourly rates of $150 for senior partner, $140 for junior partner, $125 for associates and $75 for paralegals for work performed in 2005 through May 2008 are reasonable); Combe v. Life Ins. Co., No. 06-8909, 2008 WL 544547, at *3 (E.D. La. Feb. 27, 2008) (Livaudais, J.) (awarding $250 per hour for work performed in 2006 through 2007 to attorneys who had practiced for more than 20 years in the relevant legal field and $70 per hour for paralegal work).

Next, I must determine the reasonable number of hours that plaintiffs' counsel expended on the litigation. As a general proposition, all time that is excessive, duplicative or inadequately documented should be excluded. Watkins, 7 F.3d at 457. Attorneys must exercise "billing judgment" by "writing off unproductive, excessive, or redundant hours" when seeking fee awards. Green v. Administrators of Tulane Educ. Fund, 284 F.3d 642, 662 (5th Cir. 2002) (citing Walker, 99 F.3d at 769); accord Hensley, 461 U.S. at 433-34. The fee seeker's attorneys are "charged with the burden of showing the reasonableness of the hours they bill and, accordingly, are charged with proving that they exercised billing judgment." Walker, 99 F.3d at 770.

The hours expended by the Kilpatrick Stockton attorneys are amply documented in detail in contemporaneous invoices and in sworn summaries. Record Doc. No. 314-2, Plaintiffs' Exhs. A and B attached to Henn's declaration; Record Doc. No. 331, Hooker's declaration; Record Doc. No. 334-2, Plaintiffs' Exhs. 1, 2 and 3 attached to Henn's supplemental declaration.

The hours worked by Bergin and his paralegal, McGehee, are not adequately documented in plaintiffs' original submissions. See Local Rule 54.2 ("[T]he party desiring to be awarded [attorney's] fees shall submit to the court a contemporaneous time report reflecting the date, time involved, and nature of the services performed. The report

shall be in both narrative and statistical form and provide hours spent and justification thereof.").

In his original declaration, Bergin states that his work and that of his paralegal resulted in total fees of $6,693.20. He says that his hourly rate was initially $350, which increased to $395 at some unspecified time, and that his paralegal's rate increased from $110 to $120 at some unspecified time. He states that he worked more than 13 hours during the first week of January 2008 alone, and that his paralegal worked for a total of 6.4 hours during the period of December 31, 2007 through May 7, 2008. Plaintiffs have not submitted a contemporaneous billing statement for this work, but have attached only a summary, which provides only the date and a brief description of the work done. The summary does not show which tasks were performed by Bergin and which by McGehee, the number of hours worked by each timekeeper on each task, or the fees incurred for the hours worked that day by each timekeeper. Record Doc. No. 314-9. In his court-ordered supplemental declaration concerning this time period, Bergin states that he billed for a total of 16.7 hours and that his hourly rate increased from $350 to $389 to $395, again without specifying when the rates changed. He states, inconsistently with his first declaration, that his paralegal billed for a total of 7.0 hours at the rate of $110. This declaration again contains no breakdown of the work performed by hours, date, person, task or hourly rate on any particular date. Record Doc. No. 332.

12

Based on these submissions, I cannot analyze the reasonableness of the hours expended by Bergin and McGehee. Because plaintiffs have failed to carry their burden of submitting adequate documentation of the hours reasonably worked during this time period, I recommend that no fees be awarded for any work of Bergin and McGehee performed between December 31, 2007 and May 7, 2008.

Bergin's second declaration filed with plaintiffs' supplemental memorandum is an improvement over his original declaration. The second declaration includes a description of the work done each day, the time that Bergin spent on the task and his hourly rate on that date. (No paralegal work is reflected on this declaration). This documentation is generally adequate, except that some of the descriptive entries, such as "reviewed additional pleadings," "exchanged e-mail with Mr. Henn" and "reviewed and responded to e-mail," are too vague to support a fee award. Walker, 99 F.3d at 773; LP&L, 50 F.3d at 326 n.11; Von Clark v. Butler, 916 F.2d 255, 259 & n.6 (5th Cir. 1990). Accordingly, I will reduce Bergin's hours worked from August 26, 2008 through November 25, 2008 by two percent to account for these minor defects.

Smack argues that plaintiffs' counsel did not exercise billing judgment and that plaintiffs' hours should therefore be reduced by at least 10 percent. As to Smack's arguments in this regard, I credit the responsive arguments made by plaintiffs in their motion papers. I find that plaintiffs' counsel generally exercised appropriate billing

judgment in reducing the fees sought. Henn describes in his declarations how the case was staffed with a Kilpatrick Stockton partner, an associate and a paralegal to minimize excessive fees. He explains the significant time constraints placed on plaintiffs' counsel by Smack's new infringement, which was discovered shortly before the BCS National Championship Game between plaintiffs LSU and Ohio State and which required their counsel to move very quickly to obtain a temporary restraining order. Henn avers that he personally reviewed each billing invoice and exercised billing judgment, noting in particular that certain time expended either was not recorded, or was recorded but not billed. Bergin makes similar statements in his declarations.

    I find that the hours expended by plaintiffs' attorneys in their attempt to remedy Smack's noncompliance with this court's prior orders, as reflected in their detailed billing statements and summaries, were in very large part reasonable, necessary, non-duplicative and sufficiently documented. Smack has identified a few examples (and my own review has identified a few more) of block entries by Kilpatrick Stockton attorneys that included some non-compensable work, such as work on an appeal brief that was unrelated to the motions for which fees have been awarded. Smack also argues that plaintiffs' Atlanta counsel billed inappropriately for travel time, which in the Fifth Circuit is usually compensated at 50% of actual time. <u>Watkins</u>, 7 F.3d at 459. Henn in his declaration does not mention any reductions in the hours billed for travel time.

14

Because the non-compensable work is included within block time entries, I cannot ascertain how much time was actually devoted to these tasks. Therefore, I will reduce the hours billed by Kilpatrick Stockton by two percent to account for lack of billing judgment in these minor respects.

Accordingly, I recommend that plaintiffs recover for the following hours expended and fees incurred by the Kilpatrick Stockton attorneys.

| Name of Timekeeper | Hours Billed | Hours Reduced By 2% | Multiplied by Hourly Rate | Lodestar Amount |
|---|---|---|---|---|
| Henn | 42.0 | 41.160 | 325 | $13,377.00 |
| Fonoroff | 1.3 | 1.274 | 225 | 286.65 |
| Pequignot | 96.6 | 94.668 | 150 | 14,200.20 |
| Hooker | 60.5 | 59.290 | 140 | 8,300.60 |
| Bergin[6] | 2.4 | 2.352 | 325 | 764.40 |
| Teilhaber | 25.2 | 24.696 | 80 | 1,975.68 |
| Fesshazion | 0.1 | 0.098 | 80 | 7.84 |
| TOTAL | 228.1 | 223.538 | | $38,912.37 |

Multiplying the reasonable hourly rates and the time expended by the attorneys, as reflected above, I find that the total of $38,912.37 in attorneys' fees is reasonable and awardable. I do not find that any of the Johnson factors warrants either an enhancement or a reduction of this amount. After eliminating the Johnson factors that are presumably

---

[6]As previously discussed, I am not including 16.7 hours that Bergin billed and 7 hours that his paralegal billed between December 2007 and May 2008. The "hours billed" for Bergin in the table above are only those adequately documented in plaintiffs' supplemental memorandum for the period of August 2008 through November 2008.

subsumed in the lodestar or prohibited from consideration, only four factors remain for an adjustment analysis: the customary fee, the undesirability of the case, the nature and length of the professional relationship with the client and awards in similar cases. The customary fee appears to be the fee reflected in the billing statements and has already been evaluated in establishing a reasonable hourly rate. The nature and length of the professional relationship between plaintiffs and their attorneys is unknown but is of minimal importance in this overall context. The case was not undesirable. Accordingly, I find that the lodestar amount of attorney's fees as calculated above is reasonable.

Applying the same reasonableness standard discussed above, I find that plaintiffs should be reimbursed for their costs as follows. Plaintiffs seek a total of $7,466.80 in costs expended by Kilpatrick Stockton through November 2008. They also seek $6.20 in copying costs that Jones Walker incurred, according to Bergin's original declaration. Record Doc. No. 314-9, at ¶ 3. However, Bergin provided no documentation to support that cost. Accordingly, I recommend that plaintiffs not be awarded any costs expended by Jones Walker.

As to the Kilpatrick Stockton costs, Smack contends that plaintiffs did not need to hire counsel from outside New Orleans and that they should not recover any costs for counsel's airfare between Atlanta and New Orleans or for meals while in New Orleans. Although I have previously recommended in this case the denial of these types of costs

for lack of adequate documentation and because airfare and meals are not included in the federal costs statute, 28 U.S.C. § 1920, the instant application differs from plaintiffs' prior application for costs in two ways.

First, immediate action was necessitated by Smack's infringement in the extremely short time frame before the BCS National Championship Game. Plaintiffs were justified in using the same experienced, knowledgeable and successful attorneys who had represented them throughout this litigation and who were familiar with the case, the issues, the evidence and the court's previous rulings, rather than wasting valuable time seeking local counsel with similar expertise who would have to be educated about the case.

Second, the costs here are not awarded under 28 U.S.C. § 1920, but are awarded as compensation for Smack's civil contempt of this court's prior order. "There are contempt cases in abundant number holding that a court has discretion to award reasonable attorney's fees and other expenses necessary to make an innocent party whole." Dow Chem. Co. v. Chemical Cleaning Inc., 434 F.2d 1212, 1215 (5th Cir. 1970) (citations omitted); accord Superior Testers, Inc. v. Damco Testers, Inc., 336 F. Supp. 37, 40 (E.D. La. 1971) (Rubin, J.) (citing Dow Chem. Co., 434 F.2d at 1215), aff'd, 468 F.2d 629 (5th Cir. 1972). The award is intended to reimburse plaintiffs for the expenses they incurred because of Smack's noncompliance with the permanent injunction. Cook, 559

F.2d at 272-73. Thus, an award of expenses in this instance is not as limited as an award of costs under Section 1920 would be.

The recommended award of costs here will include the airfare and other travel expenses, including meal expenses, incurred by plaintiffs' counsel from Atlanta, which were incurred because of Smack's renewed infringement. See Superior Testers, Inc., 336 F. Supp. at 40 (contempt award includes travel expenses, including meals and lodging; and costs for copies, exhibits, clerical services and investigative services).

However, not all of the requested costs are recoverable. I find that $77.04 should be deducted for Westlaw legal research done on February 6, 2008. According to the attorneys' time entries, the only research done that day concerned the appeal then pending in the Fifth Circuit. I will also deduct the following charges incurred on September 26, 2008 in connection with filings in the Fifth Circuit: $14.54 for sending a package via Federal Express to the Fifth Circuit Clerk of Court and $12.75 in document reproduction charges. Finally, I will deduct all long distance charges, which total $49.74, because long distance charges are overhead, not awardable costs. Speaks v. Kruse, No. 04-1952, 2006 WL 3388480, at *8 (E.D. La. Nov. 20, 2006) (Livaudais, J.); Yasui v. Maui Elec. Co., 78 F. Supp. 2d 1124, 1130 (D. Haw. 1999); Embotelladora Agral Regiomontana, S.A. de C.V. v. Sharp Capital, Inc., 952 F. Supp. 415, 418 (N.D. Tex. 1997). The total of these deductions is $154.07.

I find that the remainder of Kilpatrick Stockton's costs were reasonable and necessarily incurred because of Smack's noncompliance with this court's prior order. Therefore, I recommend that plaintiffs be awarded their costs of $7,312.73 ($7,466.80 minus $154.07).

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that defendants, Smack Apparel Company and Wayne Curtiss, pay to plaintiffs $38,912.37 in reasonable attorney's fees and $7,312.73 in reimbursable costs, all as reflected above.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __27th__ day of February, 2009.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE